# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

DAVID GILLUS, individually and on behalf of all others similarly situated,

Plaintiff,

-against-

ARIZONA BEVERAGES USA LLC,

Defendant.

SUMMONS

Index No.
Purchased on November 15, 2024

To the above-named Defendant:

**PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** to answer the Complaint of the Plaintiff and to serve a copy of your Answer on the Plaintiff at the attorney address indicated below within 20 days after service of this Summons (not counting the day of service itself), or within 30 days after service is complete if the Summons is not delivered personally to you within the State of New York.

YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the Complaint.

Dated: November 15, 2024

/s/Spencer Sheehan
Sheehan & Associates P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com

Plaintiff Gillus designates Kings County as place of trial. The basis of venue is:

☒ Plaintiff Gillus' residence, 551 Chestnut St, Brooklyn NY 11208

☐ Where a substantial part of the events or omissions giving rise to the claim occurred

☐ Other

ingredients.[1]

5. "Additives" refers to non-food substances, created in laboratories, to fulfill various functions, such as facilitating processing ("processing aids"), improving appearance ("coal tar dyes," rebranded as "colorants"), increasing bulk ("fillers" and "thickeners"), creating or enhancing taste ("flavorings"), facilitating the suspension of one liquid in another ("emulsifiers"), and extending shelf-life, concealing inferiority, and slowing deterioration ("preservatives").

6. To prevent companies from exploiting "extrinsic cues such as visual information,"[2] when it comes to selecting natural foods, the Federal Food, Drug and Cosmetic Act ("FFDCA"), the model for this State's identical Agriculture and Markets Law ("AGM"), prohibits "misbranding" and adulteration of foods promoted as "natural," defined through a "negative" definition, to mean nothing

[1] Andrea Rock, "Peeling Back the 'Natural' Food Label," Consumer Reports, 27 January 2016.

[2] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Products Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326; Okamoto and Ippeita, "Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives," Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013; Clement, J., Visual Influence on In-Store Buying Decisions: An Eye-Track Experiment on the Visual Influence of Packaging Design, Journal of Marketing Management, 23, 917-928 (2007); Gupta K, O. et al., Package Downsizing: Is it Ethical? 21 AI & Society 239-250 (2007).

to a food, may be slightly different, the Federal Trade Commission ("FTC") identified two major elements, (1) minimal processing, and (2) the absence of artificial or synthetic ingredients or additives, as integral to a "natural food."

10. Thus, it was considered by many to be scientifically acceptable, as well as desirable, to use the term "natural" to describe foods which have been relatively untampered with and which closely resemble the original form in which they were grown or raised.

11. With respect to "minimal processing," this generally means the removal of inedible substances, following harvest, followed by the application of physical processes, such as cutting, grinding, drying, or pulping, which change only the form of the food, and/or processing necessary to make the food edible or safe for human consumption, or to preserve it.

12. The Association of Food and Drug Officials of the United States ("AFDOUS") previously adopted a definition of "natural" as a food or a blend of foods derived entirely from components as they are found in nature (water lost on dehydration excepted).

13. This definition provided that the food or blend of foods may be processed to the extent that inedible or non-nutritive substances are removed.

14. Years later, the FTC continues to emphasize the importance of "natural" descriptions to consumers, prohibiting marketing products as "All Natural," and



17. The Product is "misbranded" and misleads consumers, because despite its representation as "All Natural," such that purchasers will reasonably expect a combination of strawberry juice, kiwi juice, added water, and/or added sugar, it contains (1) numerous ingredients not normally expected in this type of food, (2) artificial or synthetic ingredients, and/or (3) highly processed ingredients, unlike anything available in nature, revealed from the fine print of the ingredient list, on the

Juice Cocktail."

19. The second most predominant ingredient, high fructose corn syrup ("HFCS"), is not "all natural," because it is not an ingredient that exists in nature, as no natural corn exists with a high fructose content.

20. HFCS is prepared as a clear aqueous solution from high dextrose-equivalent corn starch hydrolysate, by partial enzymatic conversion of glucose (dextrose) to fructose using an insoluble glucose isomerase enzyme preparation.

21. The manufacture of HFCS occurs using specialized enzymes and fixing agents.

22. This utilizes a portion of glucose in corn sugar, converting it to fructose.

23. The manufacture of fructose is a chemical reaction process, that changes glucose, which was extracted from a naturally occurring plant material, i.e., corn, into fructose.

24. The fifth and ninth ingredients, citric acid and ascorbic acid, could be natural, if they were obtained from citrus fruits.

25. However, increase in demand for these ingredients, along with utilization of citrus fruits for direct consumption, means that citric acid and ascorbic acid are no longer commercially obtained from citrus fruits.

26. Today's citric acid is "a major industrial chemical," "made from *Aspergillus niger* (aka: black mold)…that comes [usually] from sugar sourced from

hydrogenation, with synthetic substances, then is converted to sorbitol, before ascorbic acid is made.

35. The FDA has even issued "Warning Letters" to companies that described their foods as "natural," "100% natural," and/or "all natural," when they contained synthetically produced ingredients, like citric acid and/or ascorbic acid.

36. Though the sixth ingredient of "natural flavors" contains the word, "natural," and is defined as "the essential oil, oleoresin, essence or extractive...which contains the flavoring constituents derived from a [] fruit [or juice]," many have noted how "There is little substantive difference in the chemical compositions of natural and artificial flavors."[10]

37. This is because both are "blends [of] appropriate chemicals together in the right proportions."[11] 21 C.F.R. § 101.22(a)(3) *compare with* 21 C.F.R. § 101.22(a)(1).

38. One Harvard Professor went further, by "unequivocally stat[ed], 'One thing you can be sure of when you see 'natural flavor' on a package is that it is not

---

[10] Roni Caryn Rabin, Are 'Natural Flavors' Really Natural?, New York Times, Feb. 1, 2019.

[11] Natasha Longo, Food Labs Use an Average of 2000 Chemicals to Create 500 'Natural Flavors' You Would Never Suspect are Artificial, Waking Times, Aug. 27, 2013.

43. None of these non-flavor ingredients are required to be declared anywhere on a food's label, because they are considered "incidental additive[s] in a food, originating in a [] flavor used in the manufacture of the food." 21 C.F.R. § 101.22(h)(2).

44. Though the eighth and twelfth ingredients of "Fruit and Vegetable Juice For Color…[and] Beta Carotene For Color," are natural, their use in a kiwi and strawberry juice drink is not "natural," because the only types of colors considered "natural" are natural are those "natural to" the food itself. 21 C.F.R. § 70.3(f).

45. While it is possible that the listing of "Fruit [] Juice For Color" could be derived from strawberries and kiwis, this is unlikely because strawberry juice and kiwi juice are separately listed as their own ingredients.

46. Therefore, it would be unnecessary to add these again under the more generic name, "Fruit [] Juice For Color."

47. Based on the Product's description as a "Kiwi Strawberry Fruit Juice Cocktail," the addition of "[] Vegetable Juice For Color" would not be from the food itself, because it makes no representation that it is a vegetable juice product.

48. Beta-carotene is a strongly colored red-orange pigment, found in fruits and vegetables.

49. Natural beta-carotene is obtained from carrots, cantaloupes, oil of palm fruits, sweet potatoes, and pumpkins, among other sources.

omitted or abstracted." AGM § 200(7); 21 U.S.C. § 342(b)(1).

56. This is revealed through the fine print of the ingredient list, on the back of the bottle, listed in order of predominance by weight, showing that the amount of kiwi and strawberry ingredients are negligible, de minimis, and/or significantly less than expected. 21 C.F.R. § 101.4(a).





**INGREDIENTS:** FILTERED WATER, HIGH FRUCTOSE CORN SYRUP (GLUCOSE-FRUCTOSE SYRUP), PEAR JUICE FROM CONCENTRATE, KIWI JUICE FROM CONCENTRATE, CITRIC ACID, NATURAL FLAVORS, STRAWBERRY JUICE FROM CONCENTRATE, FRUIT AND VEGETABLE JUICE FOR COLOR, ASCORBIC ACID (VITAMIN C), GUM ACACIA, ESTER GUM, BETA CAROTENE FOR COLOR.

appear better than it is or of greater value than its true value." AGM § 200(10); 21 U.S.C. § 342(b)(4).

61. The added "Natural Flavors" contributes, enhances, resembles, provides, and/or simulates, the taste of kiwis and/or strawberries, causing consumers to believe what they are consuming is due to a greater amount of kiwi juice and/or strawberry juice.

62. The Product is "misbranded" and mislead consumers, because despite its name, "Kiwi Strawberry Fruit Juice Cocktail," and pictures of kiwis and strawberries, causing purchasers to expect the predominant and/or exclusive juice ingredients were kiwi juice and strawberry juice, or at least that kiwi juice and strawberry juice were present in a relatively significant amount, compared to other fruits, when this was false. AGM § 201(1); 21 U.S.C. § 343(a)(1).

63. The Product is "misbranded" and misleads consumers, because its name, "Kiwi Strawberry Fruit Juice Cocktail," and pictures of kiwis and strawberries, "fails to reveal facts material in light of such representations," because in place of an absolute and relatively greater amount of juices from kiwis and/or strawberries, it has substituted pear juice. AGM § 201(1); 21 U.S.C. § 343(a)(1); 15 U.S.C. § 55(a)(1).

64. Substituting pear juice for kiwi juice and strawberry juice, is of material interest to consumers, because (1) juice from berries, such as kiwi juice and

disclosure, including 21 C.F.R. § 102.33(a).[13]

68. Although labeling mixtures of various juices can be challenging, identical federal and state regulations provide instructions and flexibility, so manufacturers can convey truthful and non-misleading information to consumers. 21 C.F.R. § 102.33.

69. First, while the addition of natural flavors is not required to be part of a juice's name, unless the declared juices alone do not characterize the juice, prior to the addition of the added flavors, the Product's ingredients list "Natural Flavors" ahead of "Strawberry Juice From Concentrate." 21 C.F.R. § 102.33(b).

70. That the Product has a greater amount and/or quantity of "Natural Flavors," compared to one of its declared juices, strawberry juice, means that the strawberry juice is unable to characterize it, before the addition of these added flavors.

71. Based on information and belief, and the investigation of Counsel, based on review of trade literature and/or treatises, added flavorings seldom make up more than two percent of a food or beverage's formulation, by weight or volume, and such allegation is likely to have evidentiary support, following opportunity for discovery.

72. Moreover, natural flavors are highly concentrated solutions, consisting only of aroma and flavor compounds, whereas the juices themselves consist mainly

[13] FDA Warning Letter to Shemshad Food Products, Inc., Mar. 11, 2011.

non-represented juice, pear juice, and/or indicate to purchasers the Product contains juice other than the represented juices, "Fruit Juice Cocktail" does not adequately inform purchasers that (1) the non-represented juice, pear juice, is the predominant juice, and/or (2) it contains any juices other than the represented juices, because "Fruit Juice," without more, merely affirms what consumers reading "Kiwi Strawberry" above it already know, since these are fruit juices.

77. The FDA provides an example of how to inform consumers in a non-deceptive way, such as "apple juice in a blend of two other fruit juices," with the word "other" sufficient to indicate juices beyond the represented juices. 21 C.F.R. § 102.33(c).

78. The Product is "misbranded," and misleads consumers, because as a diluted multiple-juice beverage, where kiwi juice and strawberry juice are named on the label, other than in the ingredient statement, but kiwi juice and strawberry juice are not the predominant juices, its common or usual name is required to indicate that the named juices, kiwi juice and strawberry juice, are present as a flavor or flavoring, such as Kiwi and Strawberry Flavored Juice Cocktail. 21 C.F.R. § 102.33(d)(1) (providing examples as "'Raspcranberry,' raspberry and cranberry flavored juice drink").

79. The Product is "misbranded," and misleads consumers, because Kiwi

82. Plaintiff Gillus is a resident of New York.

83. The Court has jurisdiction over Defendant because it transacts business within New York and sells the Product to consumers within New York, through its sale and/or distribution from third-parties, including grocery stores, big box stores, dollar stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ethnic food stores, gas station convenience stores, other similar locations, and/or online, to citizens of this State.

84. Defendant transacts business in New York, through the sale of the Product to citizens of New York, from third-parties, including grocery stores, big box stores, dollar stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ethnic food stores, gas station convenience stores, other similar locations, and/or online, to citizens of this State.

85. Defendant has committed tortious acts within this State through the distribution and sale of the Product, which is misleading to consumers in this State.

86. Defendant has committed tortious acts outside this State by labeling, packaging, representing, and/or selling the Product in a manner which causes injury to consumers within this State, by misleading them as to its contents, production practices, type, origins, quantity, amount, and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial revenue from the sale

free from additives, and/or the use of industrial chemistry.

93. Plaintiff is like most consumers, who believes that foods labeled as natural are better and/or healthier than those not so identified.

94. Plaintiff is like most consumers, who prefer juices based on novel and more interesting ingredients, like kiwis and strawberries, compared to pears.

95. Plaintiff read, saw, and/or relied on the packaging and labeling, including "All Natural," and/or "Kiwi Strawberry Fruit Juice Cocktail," with pictures of kiwis and strawberries, to believe the Product (1) did not contain synthetic and/or highly processed ingredients, (2) contained ingredients which either exist in nature or undergo minimal processing, and/or (3) kiwi juice and strawberry juice were the exclusive or predominant juice ingredients, or at least that kiwi juice and strawberry juice were present in a relatively significant amount, compared to other fruits.

96. Plaintiff bought the Product with the labeling and packaging identified here, at or around the above-referenced price.

97. Plaintiff purchased the Product between October 2021 and October 2024, at third-parties, which may include grocery stores, big box stores, dollar stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ethnic food stores, gas station convenience stores, and/or other similar locations, in New York.

98. The Product was worth less than what Plaintiff paid, and/or he would not

representations, omissions, and actions.

104. Plaintiff is an adequate representative because his interests do not conflict with other members.

105. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

106. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

107. The class is sufficiently numerous, with over one hundred members, because the Product has or had been sold throughout the State for several years, with the representations, omissions, packaging, and/or labeling identified here, from third-parties, including grocery stores, big box stores, dollar stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ethnic food stores, gas station convenience stores, other similar locations, and/or online, to citizens of this State.

108. Plaintiff's Counsel is competent and experienced in complex class action litigation, and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
<u>General Business Law ("GBL") §§ 349 and 350</u>

109. To the extent required, this section incorporates by reference other paragraphs, as necessary.

Cocktail," with pictures of kiwis and strawberries, caused purchasers to expect it (1) did not contain synthetic and/or highly processed ingredients, (2) contained ingredients which either exist in nature or undergo minimal processing, and/or (3) kiwi juice and strawberry juice were the exclusive or predominant juice ingredients, or at least that kiwi juice and strawberry juice were present in a relatively significant amount, compared to other fruits, which was unfair and deceptive to consumers.

116. The packaging and labeling of the Product violates laws, statutes, rules, regulations, and/or norms, which prohibit unfair, deceptive, and/or unconscionable conduct, against the public.

117. The packaging and labeling of the Product violated the GBL, because the representations, omissions, design, markings, and/or other elements, including "All Natural," and/or "Kiwi Strawberry Fruit Juice Cocktail," with pictures of kiwis and strawberries, caused purchasers to expect it (1) did not contain synthetic and/or highly processed ingredients, (2) contained ingredients which either exist in nature or undergo minimal processing, and/or (3) kiwi juice and strawberry juice were the exclusive or predominant juice ingredients, or at least that kiwi juice and strawberry juice were present in a relatively significant amount, compared to other fruits, which was contrary to statutes and/or regulations, which prohibit consumer deception by companies in the labeling of food products.

<u>State</u> <u>Federal</u>

based on the misleading labeling and packaging of the Product, a deceptive practice under the GBL.

121. Plaintiff may produce evidence showing how he and consumers paid more than they would have paid for the Product, relying on Defendant's representations, omissions, packaging, and/or labeling, using statistical and economic analyses, hedonic regression, hedonic pricing, conjoint analysis, and/or other advanced methodologies.

122. This means individual damages will be based on the value attributed to the challenged claims and/or omissions, a percentage of the total price paid.

123. As a result of Defendant's misrepresentations and omissions, Plaintiff was injured and suffered damages, by payment of a price premium for the Product, which is the difference between what he paid based on its labeling, packaging, representations, statements, omissions, and/or marketing, and how much it would have been sold for without the misleading labeling, packaging, representations, statements, omissions, and/or marketing, identified here.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative, and the undersigned as Counsel for the class;

## Certificate of Service

I certify that on November 15, 2024, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

| | Electronic Filing | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☐ | ☐ | ☐ | ☐ |
| Plaintiff's Counsel | ☒ | ☐ | ☐ | ☐ |
| Court | ☒ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan

To find legal information to help you represent yourself visit www.nycourthelp.gov

**Information for Attorneys**
**(E-filing Commencement Documents is Mandatory)**

Attorneys representing a party must either consent or decline consent to electronic filing and service through NYSCEF for this case.

Attorneys registered with NYSCEF may record their consent electronically in the manner provided at the NYSCEF site. Attorneys not registered with NYSCEF but intending to participate in e-filing must first create a NYSCEF account and obtain a user ID and password prior to recording their consent by going to www.nycourts.gov/efile.

Attorneys declining to consent must file with the court and serve on all parties of record a declination of consent.

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center ( phone: 646-386-3033; e-mail: nyscef@nycourts.gov ).

Dated: February 11, 2025

Spencer Sheehan
Name

Sheehan & Associates, P.C.
Firm Name

60 Cuttermill Rd, Ste 412
Great Neck NY 11021
Address

(516) 268-7080
Phone

spencer@spencersheehan.com
E-Mail

To: ARIZONA BEVERAGES USA LLC,

c/o Martin Cunningham
60 Crossways Park Dr W
Woodbury NY11797

6/6/18